UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DREDGING SUPPLY RENTAL, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 17-12200** |
| **USA DEBUSK, LLC** | **SECTION: "H"(5)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 21). For the following reasons, the Motion is DENIED.

## BACKGROUND

This action arises from an incident in which a dredge sank in the Yellowstone River. The essential facts relating to this Court's jurisdiction are not disputed. Plaintiffs Dredging Supply Rental, Inc. and Deep South Dredging, Inc. owned the dredge KATHY, a 34-foot vessel registered with the United States Coast Guard. The KATHY maneuvered itself with three spuds, pilings that can be raised and lowered into the riverbed. It dredged with a

1

cutting head that loosened sediment and soil from the river bed, which was then sucked up by a suction head and pumped ashore through pipelines attached to the dredge. The KATHY was portable; it could be disassembled, packed into several trucks for transport over land to another location, and reassembled.

Defendant USA Debusk, LLC contracted with ExxonMobil to clear sediment away from a water intake pipe used by an ExxonMobil refinery in Montana. The refinery was based on land and drew water from the adjacent Yellowstone River to use as coolant. Defendant entered into an oral contract with Plaintiffs to rent the KATHY in order to complete the ExxonMobil job. Pursuant to the contract, Plaintiffs delivered three truckloads of parts to the ExxonMobil site where Defendant then assembled the KATHY and launched it into the Yellowstone River. The assembly process took longer than Defendant expected. On October 22, 2017, shortly after operations commenced, the KATHY began to take on water and eventually settled onto the bottom of the river.

Plaintiffs filed suit on November 10, 2017 invoking this Court's admiralty jurisdiction and seeking to recover damages incurred in connection with the sinking of the KATHY, including the value of the vessel, unpaid amounts on the contract to hire the vessel, lost future profits, and any cost to salvage the vessel. Intervenor Great American Insurance Co., the hull and protection and indemnity insurer of Plaintiffs, filed a Complaint of Intervention on January 30, 2018 incorporating the allegations of Plaintiffs' Complaint and asserting its own claim of subrogation against Defendant to recover payments made to Plaintiffs under its policies.

Defendant now moves to dismiss Plaintiffs' and Intervenor's complaints pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the

this Court lacks subject matter jurisdiction. Plaintiffs and Intervenor separately oppose the Motion.

**LEGAL STANDARD**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be dismissed for lack of subject matter jurisdiction. A complaint lacks federal subject matter jurisdiction when the district court "lacks the statutory or constitutional power to adjudicate a case."[1] District courts are granted federal admiralty jurisdiction in 28 U.S.C. § 1333. A district court has the power to dismiss a complaint for lack of subject matter jurisdiction on three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[2] The party asserting federal admiralty jurisdiction bears the burden to prove that federal admiralty jurisdiction exists.[3]

**LAW AND ANALYSIS**

Plaintiffs assert claims against Defendant sounding in tort and contract. The Court will address its jurisdiction over each set in turn. Intervenor does not assert a basis for jurisdiction independent of Plaintiffs' Complaint and therefore its Complaint of Intervention will not be examined separately.

**A. Contract Claims**

Federal admiralty jurisdiction over a contract claim "'depends upon . . . the nature and character of the contract,' and the true criterion is whether [the

---

[1] Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998).
[2] Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).
[3] Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).

3

contract] has 'reference to maritime service or maritime transactions.'"[4] A contract is subject to admiralty jurisdiction when "the principal objective of a contract is maritime commerce."[5] "A charter party is a classic example of a maritime contract."[6]

The Court has admiralty jurisdiction over the contract at issue because it was a charter party with the principal objective of supplying a vessel to perform dredging operations on a navigable waterway. Defendant attempts to avoid this conclusion by characterizing the contract as one for the transport and rental of equipment that Defendant would assemble and use to maintain a land-based facility. However, the straightforward facts of the arrangement and Defendant's own pleadings in this and a related lawsuit belie such rhetorical gymnastics.

In Defendant's Counterclaim in this suit, Defendant states that Plaintiffs "offered to rent a dredge to [Defendant] for a project with one of [Defendant]'s most important customers."[7] Defendant obtained assurances that the "dredge was in good condition," and, "[i]n reliance on Plaintiffs' representations, [Defendant] rented the dredge."[8] Defendant asserts a contract claim on the basis that Plaintiffs, "breached their rental agreement with [Defendant] by providing a dredge that was not in good condition."[9] Similarly, in a suit that Defendant filed in Texas state court, Defendant described the nature of this dispute thusly:

---

[4] Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 24 (2004).
[5] *Id.* at 25; *see also* Robert Force, *The Aftermath of* Norfolk Southern Railway v. James N. Kirby, Pty Ltd.*: Jurisdiction and Choice-of-Law Issues*, 83 TUL. L. REV. 1393, 1397 (2009) (collecting cases applying *Norfolk Southern*).
[6] Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1214 (5th Cir. 1986).
[7] Doc. 15 at 7.
[8] Doc. 15 at 7.
[9] Doc. 15 at 8–9.

4

> This is a negligence suit for damages involving a capsized dredging vessel owned by Deep South that it rented to Debusk. Deep South negligently represented to Debusk that the vessel was seaworthy and otherwise in good condition for dredging operations. In fact, Deep South knew that the vessel was damaged and unseaworthy.[10]

In that suit, Defendant also asserted a contract claim against Plaintiff Deep South Dredging Co. on the basis that "[Deep South] breached its rental agreement with Debusk in that it failed to comply with the warranty of seaworthiness."[11]

Up until this Motion was filed, then, the parties appear to have agreed that the contract at issue was for the rental of a seaworthy dredging vessel. Documents preceding the incident also support that conclusion. Plaintiff Deep South Dredging, Inc. provided Defendant with a quote "to provide 1-fully operated 10 inch ladder dredge with sufficient pipeline to dredge the Exonn Intake on the Yellowstone River."[12] The estimate sets forth lump sum prices for mobilization and demobilization and a daily rate for dredge operation.[13] Ultimately the parties entered into a contract with the same payment structure but in which Defendant would operate the dredge itself.

That the KATHY had to be transported a significant distance over land or that it required some assembly after being delivered does not change the fact that the principal objective of the contract was to obtain the use of a seaworthy dredging vessel.[14] Nor does the fact that the KATHY was to be

---

[10] Doc. 22-2 at 2.
[11] Doc. 22-2 at 4.
[12] Doc. 21-4 at 1.
[13] Doc. 21-4 at 1.
[14] *See Norfolk S. Ry. Co.*, 543 U.S. at 15 ("Under a conceptual rather than spatial approach, the fact that the bills call for the journey's final leg to be by land does not alter the contracts' essentially maritime nature.").

employed for the benefit of a land-based interest.[15] Unlike the test for admiralty jurisdiction over a tort, which looks to the general activity that the tortfeasor was engaged in, the test for admiralty jurisdiction over a contract looks only to the nature of the contract itself. Here, the contract was for the charter of a dredging vessel for operations on navigable waters. That is a maritime contract, and this Court therefore has admiralty jurisdiction over disputes arising from it.

**B. Tort Claims**

Federal admiralty jurisdiction over a tort claim requires that the tort have a maritime location and maritime connection.[16] "The location test is satisfied if the tort occurred on navigable waters or if the injury occurred on land but was caused by a vessel on navigable waters."[17]

> The connection test is satisfied if two conditions are met. First, the general features of the type of incident involved must have a potentially disruptive impact on maritime commerce. The court uses a description of the incident at an intermediate level of possible generality, that is neither too broad to distinguish among cases nor too narrow to recognize potential effects on maritime commerce. Second, the general character of the activity giving rise to the incident must show a substantial relationship to traditional maritime activity. The court considers whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand.[18]

---

[15] *See* Warren & Arthur Smadbeck, Inc., v. Heling Contracting Corp., 50 F.2d 99, 101 (2d Cir. 1931) (holding that a charter for a sand dredge to be used to build up new land was within the court's admiralty jurisdiction because "the charter upon which the suit rests was a maritime contract").
[16] *See Grubart*, 513 U.S. at 534.
[17] *In re* La. Crawfish Producers, 772 F.3d 1026, 1029 (5th Cir. 2014).
[18] *Id.* (quotations and citations omitted).

Defendant does not contest that the location test is satisfied. The KATHY sank in the Yellowstone River, a navigable waterway. As to the connection test, the first requirement is also easily satisfied. At an intermediate level of generality, the general features of the incident are that a dredge sank in navigable waters while dredging the bottom of those waters. The sinking of a vessel in navigable waters while performing work on the bottoms of the waters has the potential to disrupt maritime commerce by, for example, blocking traffic or damaging passing vessels. Defendant does not substantively contest this point either, instead focusing exclusively on the second prong of the connection test.

The issue before the Court is therefore whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity. The parties dispute how to generally characterize the activity giving rise to the incident. Defendant describes the KATHY's activity as the maintenance of a land-based refinery. Plaintiffs describe it as dredging a navigable waterway.

In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, a tunnel under a navigable river was damaged by a barge driving piles into the riverbed in order to create a structure that would mitigate collisions between the piers of a bridge and passing vessels.[19] For the purposes of the second prong of the connection test, the Court described this activity as, "repair or maintenance work on a navigable waterway performed from a vessel," and found the activity to be maritime.[20] In *In re Katrina Canal Breaches Litigation*, plaintiffs invoked the court's admiralty jurisdiction over tort claims arising from breach of the

---

[19] *Grubart*, 513 U.S. at 540.
[20] *Id.*

7

17th Street Canal during Hurricane Katrina.[21] Plaintiffs argued that admiralty jurisdiction extended to the dredging of the canal, performed from a floating dredge.[22] The Fifth Circuit described the activity as "construction/repair work performed from a vessel to allow proper drainage of the City's flood water," and held that it was not substantially related to traditional maritime activity.[23] The court reasoned that the "project implicated only local, land-based interests, and the connection, if any, to admiralty law is 'wholly fortuitous'."[24] Similarly, in *Texaco Exploration & Production, Inc. v. AmClyde Engineered Products Co.*, a vessel-based crane failed while being used to construct an oil and gas production facility in the Gulf of Mexico.[25] In holding that maritime jurisdiction did not apply, the Fifth Circuit described the activity as construction for the purpose of "development of the resources of the Outer Continental Shelf."[26]

Using a comparable approach, the activity giving rise to the incident here was maintenance work of a refinery performed from a vessel. Such activity is not substantially related to traditional maritime activity and therefore fails to satisfy the second prong of the connection test. The common thread in *Grubart*, *Katrina Canal Breaches Litigation*, and *Texaco* is that the court should look to the overall purpose of the project, not the immediate means used to carry out that purpose. In *Grubart*, the purpose of the project was the installation of pilings, which benefitted both the bridge footing they surrounded and maritime

---

[21] *In re* Katrina Canal Breaches Litig., 324 F. App'x 370, 372–75 (5th Cir. 2009) (unpublished).
[22] *Id.* at 377.
[23] *Id.* at 380.
[24] *Id.* (quoting Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 267 (1972)).
[25] Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prod. Co., 448 F.3d 760, 765, *amended on reh'g on other grounds*, 453 F.3d 652 (5th Cir. 2006).
[26] *Id.* at 771.

traffic on the river.[27] In *Katrina Canal Breaches Litigation* and *Texaco*, on the other hand, the purpose of the projects was construction that benefitted only a non-maritime interest.[28] The use of maritime means, such as dredging, did not extend admiralty jurisdiction to an otherwise non-maritime project. Here, the entire purpose of the project was to maintain a coolant intake for a land-based refinery. The location of the intake in navigable waters or the use of a floating dredge to accomplish that maintenance does not provide a maritime connection when the general character of the activity giving rise to the incident is not maritime. Accordingly, this Court does not have admiralty jurisdiction over Plaintiffs' tort claims.

This Court, however, does have supplemental jurisdiction over the tort claims. A court may exercise supplemental jurisdiction over a claim for which it lacks original jurisdiction if that claim is so related to a claim over which the court does have original jurisdiction that it "form[s] part of the same case or controversy."[29] "[A] third-party claim lacking independent grounds of jurisdiction may be appended to an admiralty action and is cognizable in federal court under the doctrine of ancillary jurisdiction so long as the ancillary claim arises out of the same core of operative facts as the main admiralty action."[30] Claims arise from a single case or controversy when all the claims "derive from a common nucleus of operative fact," such that one would expect them to be tried in a single judicial proceeding.[31] "A court's determination of

---

[27] *Grubart*, 513 U.S. at 540.
[28] *See In re Katrina Canal Breaches Litig.*, 324 F. App'x at 380; *Texaco Expl. & Prod., Inc.*, 448 F.3d at 771.
[29] 28 U.S.C. § 1367(a); *see* Miller v. Griffin-Alexander Drilling Co., 873 F.2d 809, 814 (5th Cir. 1989); Derouen v. Hercules Liftboat Co., LLC, No. 13-4805, 2016 WL 5869786, at *5 (E.D. La. Oct. 7, 2016).
[30] Joiner v. Diamond M Drilling Co., 677 F.2d 1035, 1041 (5th Cir. 1982).
[31] United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).

whether to exercise supplemental jurisdiction is guided by considerations of judicial economy, convenience and fairness to litigants."[32]

Plaintiffs' claims for breach of contract, and the defenses that Defendant has raised, involve the same nucleus of operative facts as Plaintiffs' claims sounding in tort. The reason that the KATHY sank will be central to all claims; trying them separately would be neither efficient nor fair. The Court therefore exercises its supplemental jurisdiction over Plaintiffs' tort claims.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.

New Orleans, Louisiana this 10th day of August, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[32] *Id.*